Good afternoon. May it please the court. Spencer Scharf on behalf of Plaintiff Appellant David Isabel. I will endeavor to reserve five minutes for rebuttal. Let me just call the case real quick. It's David Isabel versus Michele Reagan. I think Mr. Scharf has just entered his appearance. We may proceed. Thank you. Need apologies for that. This case is about whether an American citizen has a remedy when state and local election officials disregard his vote. Mr. Isabel, who moved to Arizona to serve as a law enforcement officer, was qualified to vote in the November 2016 election, yet defendants refused to count his ballot in violation of state law, the NVRA, and constitutional law. He is therefore entitled to recover damages against the defendant. The district court correctly assumed that Mr. Isabel was qualified to vote under Arizona law, but erred in holding that the law did not afford him a remedy to vindicate this fundamental right. The district court's holding was based on a apprehension of Mr. Isabel's claim. Mr. Isabel is not challenging Arizona's voter registration deadline. He simply asserts that he satisfied it. Mr. Isabel is not asserting a right to an error-free election. He is merely asserting his individual right to have his ballot counted. I welcome the opportunity to answer any questions the panel may have about Mr. Isabel's claim. Let me ask you, Mr. Sharpe, let's assume for a moment that we are required under C. Clammers and Rancho Palos Verdes to look at the remedies provided in the NVRA and then to N.B.R.A.'s legislative history to determine whether Congress intended for Section 1983 to be available under, you know, be available remedy for the N.B.R.A. violations. Based on that, let's also assume that the legislative history of the N.B.R.A. suggests that Congress intentionally omitted monetary relief as an available remedy. Based on what I have just described, we conclude that the rebuttable presumption of the N.B.R.A. is enforceable through Section 1983 is rebutted, and we now infer that Congress intended the remedy it created in the N.B.R.A. to be exclusive. I guess, what's your best argument to overcome this, that inference? Yes, Your Honor, and that's exactly how the Supreme Court has instructed courts to evaluate. In this case, there's no dispute that the N.B.R.A. is, we're entitled to a rebuttable presumption. The 1983 remedies are available. The best argument that we rely on in our briefs is two points. One is that there is not a comprehensive, exclusive, overarching remedial scheme that's incompatible with recognizing the availability of 1983 claims, and also that the subsection D, which is in the civil action provision of the N.B.R.A., specifically says that these remedies and rights are in addition to all other remedies and rights provided by law, and the Supreme Court has interpreted that very verbiage to indicate that that's an intent, a congressional intent to supplement, not supplant, and we would also contend that the congressional, the legislative history that Your Honor is referring to doesn't say that the N.B.R.A. is meant to preclude 1983 relief. It just simply says that this provision does not provide for damages, and that's certainly true. The text of the N.B.R.A. doesn't mention 1983, nor does it mention damages. I know you're trying to draw the distinction regarding the exhaustive administrative scheme, I guess that's in sea clamors, but the prior right of action created in the N.B.R.A. doesn't permit monetary relief, and assuming that the legislative history suggests that Congress considered whether monetary relief should be available and concluded it should not, is this absence of an administrative, sort of, exhaustive remedial scheme enough to overcome that? We believe so, Your Honor. We would argue that the court should not look to legislative history until it is determined that the text of the statute is ambiguous, and that we believe the text isn't ambiguous to the point that it provides expressly that these rights and remedies are in the N.B.R.A. The plaintiffs, excuse me, the defendants have never had an interpretation of that subsection D, the savings clause, that wouldn't exclude. What else was it meant to save, if not 1983 damages? Let me just ask another question. I mean, we're trying to understand, I'm trying to understand the presidential effect of the ADP order here, and Judge Logan addressed the validity of the October 10th voter registration deadline in his order resolving the 2016 litigation, and it's my understanding that although he found the deadline violated in N.B.R.A., he declined to require the secretary to ensure that voters who registered on that October 11th date were eligible to vote in the November 16th election. So, I'm just trying to understand what you think the effect of Judge Logan's order is on your argument that Mr. Isabel was eligible to vote in the November 2016 election because ultimately he wasn't. We would contend that had the ADP litigation never occurred, and had a decision never been entered, that Mr. Isabel would have the same claims that he presents to you today. That the ADP opinion simply provides an important fact when we're looking into discovery and proving perpetrative damage. The defendants were on notice prior to the decision not to count the ballots of what the law is, and that the October 10th deadline wasn't an accurate interpretation of the law, because the registrations submitted on October 11th were timers. So, whether or not the ADP court ever very clearly, especially under Arizona law, that when a deadline falls on a holiday, that in any act, any secular act, which is a voter registration would be done the day after, is considered done on the day before. So, any registration filed on October 11th, by operation of Arizona law, that's ARS 1-303, were filed on the 29th day, that Monday. And so, whether or not... How do you get to maintain that in light of Board of Supervisors? Yeah, exactly. So, the Board of Supervisors case is very specific related to a statute dealing with the delivery of ballots by public officials to other public officials. And in that case, the court honed in on the language of less than 30 days. And they said, that language means that we need to interpret it as a, if it was one day later, it would be less than 30 days. The issue here, ARS 116-120, doesn't have that same language. It doesn't say not less than 29 days, it says only 29th day. And the court need only look to the Secretary's own opposition brief, answering brief at page nine, where they argue that statute that has a date certain, the holiday statute applies. And this is certainly what's the case here. The date certain is the 29th day. It doesn't say not less than 29 days. We might be in a different situation there. But in this case, it's a statute providing a date certain to 29th day, that day being October 10th. It looks pretty clear, though, that Arizona had interpreted this to mean that you had to do it 29 days. I mean, they were fighting the ADP litigation. They had this Board of Supervisors case that Arizona believed compelled them to enforce their deadlines. They considered all of this before the litigation ever came up. This was all discussed earlier in 2016. So at least Arizona had interpreted its own statute to mean something else. You're asking us to tell Arizona that it's wrong? That's not the case, Your Honor. In fact, in 2012, the holiday, the registration deadline fell on Columbus Day, and Arizona issued a, even election procedures manual that was reviewed by the Attorney General's office and signed by the governor at the time. And that manual said that the deadline was, that registrations received the day after Columbus Day were timeless. And so if that was the case, was Arizona committing a lawful deadline? I think not. I think they had interpreted and has had interpreted the holiday statutes to apply to the Arizona deadline since the beginning. In fact, you cite to a 1958 Arizona Attorney General opinion that says just that, that the registration deadline that falls on July 4th, the holiday statute is applicable. This was the only time where the holiday statute was ever intended, didn't apply to voter registration deadline. So I think that there wasn't a, and I think the more important point, and I think this is the point that we were involved with the recent voter registration deadlines out of Arizona. And one important point that I took from the court's opinions was that it doesn't matter what the Secretary of State says, it's what the law is. Her job is to enforce the law. And if the deadline was October 11th, even if she says it's October 10th, it doesn't change the deadline. The deadline is prescribed by law. So are there four ways that a person can register? The DMV, mail, you can go online, and I'm forgetting, or go to county recorder's office and register. So there are multiple ways you could register. And you just said that there in 2012, I think what you said was when ballots were received on October 11th, they were counted, which suggests to me that they were talking about things being posted before the deadline, as opposed to a person appearing at the DMV or county recorder's office and trying to register on October 11th. I apologize, Your Honor, I misspoke. It wasn't that ballots were delivered, it was that the registration for any registrations submitted on the day after Columbus Day in 2012 were deemed timely. And again, we're at the motion to dismiss stage, we're at the pleading stage, and that is the fact that was pled in the complaint, that Arizona recognized that a registration received the day after Columbus Day in 2012 was timely. In fact, the defendants accepted it, Maricopa County accepted those registrations received the day after Columbus Day, and they did so because the 29th day fell on Columbus Day in 2012. So it sounds like what you're describing is that whoever was the county recorder or the Secretary of State interpreted the law differently from the way it was interpreted in 2016. The state, two different positions, correct? And these are positions that are elected, and so a new person in the position to take a different interpretation of the statute. I'm not sure how that means that what happened here was a violation of the Voter Registration Act or your client's right to vote. I mean, I guess what I'm getting at, I'm sorry, is there some kind of estoppel or is there some reason the state can't take a different position? Our view is that the state has to comply with the law. And our view is the law is clear and that the holiday statute applies to voter registration deadlines. And so registrations received the day after Columbus Day, which is in 2016, the 29th day fell on Columbus Day, but those registrations were timely. Then Mr. Isabel was a qualified Arizona resident. And so that the election officials took a different position that he wasn't qualified in violation of Arizona law would mean that they denied a qualified resident the right to vote. And we can tell Arizona what its law means? No, Arizona has said what the law means. I mean, the one thing we do have, and I don't think it's that Arizona's interpretation, that the secretary's interpretation was wrong. I think also that every authority... What if I disagree with ADP, counsel? Even if you disagree with ADP, again, I would refer you to the Arizona Attorney General's opinion from 1958 that has never been overruled. Right, but that goes back to Judge Beatty's question. Is the state sort of a stop from looking at the law again? I think what's important is when we're looking at the expectations of voters, voters have to be able to rely on that the law will be followed. And so it's not a matter of how Arizona interprets, not necessarily Arizona, it's when an official says, this is my interpretation of the law or not, it's what the law is. And the law is very clear. It says any deadline that falls on a holiday, the act that's required to be done on that date can be achieved on the next business day. And I don't think it would be this court's telling Arizona what the law is. In fact, But I guess it goes back to Judge Medina's point, or maybe it was Judge Beiby who said this, I apologize, about the Board of Supervisors case in which the Arizona Supreme Court told us what that statute means. And you are saying that actual date is the same as to be done within a certain period of time before. And I believe the Arizona Supreme Court drew a distinction between the two and said, if it's an actual date and the statute applies, if it's to be done within a specified period before it does not, which means we have binding authority within the Arizona courts and the Arizona Supreme Court that says your holiday statute doesn't apply. And in which case, I'm not sure that the district court in the ADP case, the federal court could overrule the Arizona Supreme Court on that point. I don't think the district court could overrule the Arizona Supreme Court, certainly, but I would make two points. One is the, again, the statute and Board of Supervisors said not less than 30 days. And that's the language that it focused on. That is not the language here. ARS 6120 says on the 29th day. It's a date specific, a date certain. Well, wait a minute, you don't have to register on the 29th day before. You have to do it by then, right? It's a minimum period. So you have to do it at least by the 29th day before. It actually says not later than midnight on the 29th day. I apologize. I was maybe improperly paraphrasing, but needless to say, there is a date certain, the deadline. Well, of course it can be calculated. That's why it's useful. That's the whole purpose of the NVRA. Your Honor, I would also submit that you don't the same secretary's word for it because in 2018, as we allege in our complaint, she promulgated a draft election procedures manual where she said that the, when a deadline falls on a holiday, the voter registration deadline, it must be the next business day. And she cited two ADPs. And so she interpreted that order the same way that we're interpreting it. But if we're looking at a registration book, handbook or whatever versus the Arizona Supreme Court's decision on in board of supervisors, aren't we more compelled to look at the Arizona Supreme Court's decision rather than a handbook that was issued by the secretary of state? I don't know, but I'm asking. I mean, I don't not saying that it's authority. I'm just saying that the defendant here has conceded in a promulgated manual that was approved by the attorney general of Arizona. Right. But your argument is completely circular because you said that that was 2018 and it was relying on ADP. I've given you the premise. What happens if I think ADP is wrong? I mean, obviously the secretary is, the secretary is trying to do the right thing. And if there's a federal district court that said, this is the way it gets calculated. She was, she was following that. So your, your argument was utterly circular and turns on a premise that I've asked you to assume was not, was not true. Sure. And I, I, well, I apologize for, for, for doing that, your honor. But at the same time, I do think that the premise that the, that the holiday statute is inapplicable, there isn't a board of supervisors does not say, does not, is not a Supreme Court decision on the issue of voter registration. And I think one more important point, if I may, that the statute of issues, the board of supervisors dealt with a deadline from a public official needed to deliver a ballot to another public official. It wasn't about a voter, you know, an act that a voter needed to do. And I do think that's an important distinguishment in addition to that, this statute of issues does not have not less than language, which I think is what the Supreme Court in that case put in on. Okay. Now I'd like you to, I'd like to turn to you brief, have you turned briefly to the NVRA question and tell us why Arizona's practice violates the NVRA. Well, well, well, first your honor, the, the NVRA incorporates state law. So the state law, if the deadline under state law was October 11th, then it would be violating the NVRA. And additionally, the, there are channels, which the NVRA requires to be open for at, at a minimum of 30 days. And in this case, the postmark channel, the mail channel and the NBD channel was not available to Mr. Isabel for the entire 30 days. I wanted to ask you a question before, well, I know your time is up, but let me just, before you sit down, what's your, on the right to vote, what's your best authority that a person is entitled to monetary relief or deprivation of his right to vote when there are no allegations of racial discrimination or intentional tampering? Well, your honor, there's, there's a number of authorities I pointed to. The first is the jurisdictional statute that issue here. And I know we often just kind of gloss over jurisdiction, but the Congress passed two statutes, 28 USC 1343A4, which provides original jurisdictions for covered damages or secure, equitable, or other relief under any act of Congress providing for the protection of civil rights, including the right to vote. And then 28 USC section 1357, which also provides damages, which doesn't mention that you need to bring discrimination. What's your best case law, I guess, authority. There's a Supreme court precedent. If the court wanted to look at cases that didn't involve racial discrimination, Wofford is a Supreme court decision that we cite in our brief, which dealt with a, the application of a misapplication of state law. In that case that arose out of Tennessee, an individual who is illiterate said that the statute that offered it's Wofford. Is that what you said? Yes, your honor. It's Wofford. Do you have anything more recent than that? I, then I'll submit that these cases are rarely, are rarely brought. But that the fact that a plaintiff hasn't alleged the, the, a damaged case without the discrimination isn't evidence. It doesn't prove that you cannot bring it. And I don't think the constitution certainly shouldn't be read to say that you can be, you can be deprived of right to vote as long as you weren't discriminated against in our, in our view. But that the, the right to secure damages when you're, when you're denied access to the ballot, I think has been established for a long time and recognized in the Supreme Court for a number of centuries. But I would point the court to, also to Wayne v. Denable, which is a eighth circuit decision, which did not involve discrimination. It is simply involved voters who were denied access to the ballot box. Well, yeah. And there, the officials were conspiring in that case. Is that right? And acted to prevent the plaintiffs from voting. I have two, there's two defendants before the court. There's the county defendant. We have a Monell claim against the county defendant and establish a Monell claim. You simply have to establish a custom policy or practice that deprived an individual, the right to vote. It doesn't require conspiracy or any sort of discrimination is simply that the, that a constitutional violation occurred. Whether or not the secretary had malice or evil intent, only goes to punitive damages, not whether or not she could be held liable. The court had long held that 1983 should be interpreted with, in the backdrop of court law and that an individual should simply be held accountable for the consequences of their own actions. And that's simply what we're asking the opportunity to do is, which is to pursue a claim where a, an individual who did everything that he needed to do, register and vote, okay. All right. Thank you. Thank you, your honors. Thank you, your honor. Timothy Lasoda on behalf of Michelle Reagan. And I would like to start very briefly with ARS 16-120, which was the statute that does have the 29 day limit. And that statute clearly is the, it's exactly like the statute in board of supervisors. There's no getting around it. If you're going to say you can accept these a day later, then you've made the statute say 28 days, not 29 days, which is exactly what the court and board of supervisors said you can't do. I mean, there's really no getting around that. The reference to the election procedures manual of 2018, one thing I would note is the legislature changed this law, this 2017. And that was one of the reasons that the manual did say what it said is that if this happened today, that date would be moved to the next business day. But that's true in 2020. It was not true in 2016. And as to the 2012 decision to move the date, I would just concede that was erroneous as a matter of law. It should not have been moved. But I know the panel covered that in more. So I think that's about all on that. But right off the bat, we start with the point that, you know, look, Mr. Isabel's registration was simply not timely under state law. And I think that does undergird pretty much the entire lawsuit. And, you know, sort of getting into the section 1983 and some of the cases cited, I mean, you know, these cases are from 100 years ago when when somebody showed up to vote and they were denied that right because they were African American. I mean, these cases don't are nothing approaching what happened here. I mean, we're still sitting here four years after the general election. We've had another intervening presidential election, and we're still talking about what was the proper date. I also think it's a little bit disingenuous to for Mr. Scharf to say, look, I mean, you know, these defendants were on notice that the deadline was a certain date and those votes should be accepted. You know, that the plaintiffs here went to court in 2016. The court declined to move the date. The court did say some things about the what the date should have been. But, you know, when you've got that court order in hand to suggest that that, yeah, they're on notice. And even though the court didn't order it, they should go ahead and count these votes. I mean, I think we're just in a I think there's a reason why a case like this has never come up in terms of facts that are even approaching this. And monetary damages just aren't awardable. Let me talk a little bit about some of the practicalities. I mean, you in Arizona, like like most states, you sign your early ballot and what happens. And now we're talking about millions of these early ballots, mail ballots, whatever you want to call them. The the county recorder has to go through and verify the signature. And I can just tell you that that they don't always if the signature matches, then it gets counted. If it doesn't match, they try to get a hold of the voter with millions of ballots and human beings trying to match these. You know, they don't always get that right. And some people's ballots aren't they don't get counted, even though they, quote, should have. They was actually cast by the by the actual voter, but signature change, whichever. I mean, I think that it's a it's it's a very difficult. Well, I think it would be a very bad precedent. I mean, I think you'd be talking about all kinds of different areas here that federal courts would now be getting into with monetary damages on just, you know, sort of everyday decisions that that have to be made with regard to elections. And if we look at the if we look at things like the NVRA, I mean, they're they're they're supposed to be remedial. They're supposed to be so that that we can get these things right, sort of going forward. And now we're if if we're going to say that, look, if there's any kind of issue with the vote, if a vote should have counted, but it didn't. And now that's going to be a cause of action. And obviously, I disagree with that whole premise that the vote should have counted. But but if we're going to go that route, we're going to have election officials who aren't going to be concentrating on on the elections. They're going to be concentrating on these lawsuits. They're going to be having to pay out judgments. I mean, it goes against sort of the very fundamentals of these laws that were passed to begin with. So I think that it's just a bad it's it's a bad precedent. I also I think that you know, in terms of the the legislative history that was talked a little bit at the outset, I think that's that's obviously clear. And it does support even though you probably don't need to get to it because the text seems clear. It does support the defendant here. The one of the things I think one of the mistakes Mr. Scharf has made is that he's sort of he uses the term comprehensive for as a as a synonym for long. Well, you know, the NVRA doesn't have a really lengthy scheme on on on what people should do if if they feel that it's been violated, but it nonetheless is a scheme. And Congress took the time to to put this scheme in here where it requires that if if there's been a violation that you send a notice of that violation to the to the chief election official that stayed involved and they get time to cure it or fix it or respond and then after that, you can file a lawsuit. But it seems to contemplate that you go through this administrative process and try to get it fixed that way. Well, if you could just go straight to a 1983 action, why in the world would Congress include that entire scheme? I mean, there's Mr. Scharf said when he argued that that we've never, you know, we've never come up with a reason for that whole scheme. Well, he's never come up with a reason for it. Because why if you could just go straight to 1983, what purpose does section 20510 subsection B serve? It doesn't serve any you could just if you can go straight to 1983, you can get injunctive relief or monetary damages. There's really no reason to put people through those paces. But I guess and I appreciate everything that you've said, but why is the NBRA's savings clause not an indication of or that Congress intended the remedies in the NBRA to be in addition to all other remedies like section 1983? If that was not the savings clause purpose, then you know, what was it intended to say? Well, Your Honor, I think it was intended to save causes of action that may have occurred. At that time, I think what happened is, we're going to pass the NBRA, and it is meant to add rights, it is not meant to impair any rights that exist now. And, and, and someone came along and probably said, Well, you know, I'm concerned that this is going to result in monetary judgments. But you know, I'm also concerned that that look, you know, I don't want anything in here being construed, that it's impairing a right that exists today. And so that they put the savings clause in there, I think it is similar to some of the savings clauses, I think, see clamors is probably the closest one, where, you know, you've got a savings clause. And, and, you know, the court says, Well, you know, that that still doesn't get you into 1983. And I think that's the case here. I think that it's difficult to envision every single application a law might have. So I think it's just it's sort of a natural reaction, we're going to put it in here with obviously put in the legislative history, no monetary damages, but we're also going to say, Look, you know, this isn't meant to impair any, any rights that you have now. But it doesn't mean that, that we're attacking monetary damages on to this remedial statute. And, you know, the other thing I would say about the, the, you know, Mr. Sharpe talked about the four different ways that the, well, you know, the NVRA provides for four different ways that that you can register, you know, that what it says specifically as to as to the first prong, it talks about, it says in the case of registration with MVD, which that was the case here, Mr. Isabel did, did register at a motor vehicle division. It says in case in those cases, if the valid voter registration form of the applicant is submitted to the state authority not later than the lesser of 30 days or the state law period, which is 29, that just didn't happen here. That's just not a fact that even accepting everything that Mr. Isabel pled is true that exists here, that, that he submitted, he registered on the 11th and there's nothing even in the allegations that, that he attempted to register any sooner. So I think that's also an important fact that I do think that, you know, it also talks about that it has to be postmarked. And if you kind of follow the logic that unless you move the date back to an earlier date, the deadline date, then you, you know, you'd have to say, well, you know, shouldn't the, shouldn't the postal service be, be postmarking things on Sunday and Columbus day. And I don't think that that really there's any real support for, for that proposition. So with that, I, I think I'm done with my presentation, but I would be happy to answer any questions the panel might have. Well, let me just ask you on the, on the right to vote. And, you know, because I'm trying to understand your arguments to why Mr. Isabel's right to vote claims is not, I guess, cognizable. If the right to vote and have a vote counted is secured by the constitution, why is section 1983 not a sufficient basis? Again, this is, if we go that here, but we get to this point, I want to understand your, your argument. Why is 1983 not sufficient basis on its own to support basically the viability of Isabel's claim that he was deprived of that, of that right? I guess, what's your best authority in concluding that some allegation of discrimination or criminal misconduct is absolutely required? Well, your honor, I think that, I think that Powell, which we cited does essentially stand for the proposition that, you know, you don't have a right to an, to an error-free election. I think that Mr. Isabel is going a little bit beyond just the, I think what he is asking is in fact for a perfect election. And there is distinction between those things. And I think that's why the Powell court came out the way they did is, is there just, there can't be a right to a perfect election. I mean, in this case, obviously that, you know, there's the initial disagreement over whether Mr. Mr. Isabel was properly registered. We don't think he was. And, and even if you say the date should have been October 11th, as somebody, I forget which, which of the judges was it, on the panel pointed out, he wasn't, he just wasn't registered. Even if he should have been, even if that's what should have happened, the court, the Mr. Judge Logan was invited to make that ruling and he declined. So he just wasn't, wasn't properly registered under any set of facts. So I think that, you know, it's a little bit like, like what Judge Lanza said. I mean, there, there undoubtedly is some, you know, he talked about the United States classic. You know, if you look at this, it had surface appeal, but beyond that, I think that it's, it's not just one of those situations that supports a federal cause of action based on these facts. And I think Powell supports that. All right. If there's no other questions, thank you for your presentation. Thank you. Mr. Scharf. Yes. Thank you, Your Honor. I'd like to, you're out of time, but I will give you two minutes. Thank you. I appreciate that, Your Honor. Thank you. So with those two minutes, I'd take the court back to the language ARS provides that when anything of a secular nature other than work and necessity or charity is provided or agreed to be done on a day named or within a time name and the day or the last day applies, even though it's the 29th day, even if you do that at a time period, it's the last day in that time period. And so that the holiday statute apply and the board of supervisors was focused on a narrow exception when the statute says not less than 30 days. And it provides a specific set of number of days. And no court in Arizona has ever held that the holiday statute doesn't apply to the voter register. And in our view, that's how it has been interpreted and how it should be interpreted. The ARS 1-303. The second point I'd like to emphasize is that the Supreme Court, as Your Honor has known from the briefs, has repeatedly emphasized that the right to vote can be secured. There's a remedy to damage. And it's never glossed over an evil mindset or a discriminatory purpose. When the court reaffirmed that in Nixon and Satura, it simply said that the right to vote, there is a remedy for damages when the right to vote is violated. And here we have a citizen who registered very timely upon moving to Arizona and registered within the deadline and then showed up to vote and cast that ballot. And the last point I'd like to emphasize is it contrary to my counsel from the secretary's position, Mr. Isbell wasn't a plaintiff in the ADP action. That was brought by a political party, which he is not a member of. And regardless, a political party, an organizational group would have brought a claim for contempt of court damages. He simply had no notice. In fact, the notice he had that provided him the complaint was that he was timely registered. It said, show up on election day, November 8th, and bring your ID. He did, and he voted, and his right to vote was violated. All right. Thank you very, very much. Thank you both, Mr. Sota and you, Mr. Scharf, for your oral argument presentations here today. The case of David Isbell versus Michelle Reagan is submitted. Thank you.
judges: Bybee, Murguia, Bade